Raymond P. Boucher, State Bar No. 115364
  *ray@boucher.la*
Shehnaz M. Bhujwala, State Bar No. 223484
  *bhujwala@boucher.la*
**BOUCHER LLP**
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel:   (818) 340-5400
Fax:   (818) 340-5401

David N. Lake, State Bar No. 180775
  *david@lakelawpc.com*
**LAW OFFICES OF DAVID N. LAKE, APC**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Tel:   (818) 788-5100
Fax:   (818) 788-5199

*Attorneys for Plaintiff and All Others
Similarly Situated*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIRGINIA MASTROIANNI, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEW PENN FINANCIAL, LLC, a Delaware Limited Liability Company Doing Business As SHELLPOINT MORTGAGE SERVICING; DOES 1 Through 10, Inclusive,<br><br>Defendants. | Case No.   2:15-cv-09108<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR:<br><br>1. VIOLATION OF FAIR DEBT COLLECTION PRACTICES – ROSENTHAL ACT<br>2. FRAUD – CONCEALMENT<br>3. FRAUD - MISREPRESENTATION<br>4. UNJUST ENRICHMENT<br>5. UNFAIR BUSINESS PRACTICES (BUS. & PROF. CODE §§ 17200)<br>6. INTENTIONAL INTERFERENCE WITH CONTRACT<br>7. NEGLIGENCE PER SE |

Plaintiff Virginia Mastroianni, by and through her attorneys, brings this complaint on behalf of herself and all other similarly situated homeowners whose home loans were serviced by defendant New Penn Financial, LLC, which does business as Shellpoint Mortgage Servicing, and DOE defendants 1 through 10, inclusive ("Defendants").

00051206.3

## OVERVIEW OF THE ROLE OF MORTGAGE SERVICERS

1.     The essential role of mortgage servicers, and the clear possibility of abuse when carrying out their duties, has been acknowledged and recognized by those in the government tasked with protecting consumers from predatory lending and loan servicing practices.  As explained in The Federal Register in February, 2013 when describing the new Mortgage Servicing Rules under RESPA and the Truth in Lending Act (Regulations X and Z respectively):

> The mortgage market is the single largest market for consumer financial products and services in the United States, with approximately $10.3 trillion in loans outstanding.  Mortgage servicers play a vital role within the broader market by undertaking the day-to-day management of mortgage loans on behalf of lenders who hold the loans in their portfolios or (where a loan has been securitized) investors who are entitled to the loan proceeds. Over 60 percent of mortgage loans are serviced by mortgage servicers for investors.

> Servicers' duties typically include billing borrowers for amounts due, collecting and allocating payments, maintaining and disbursing funds from escrow accounts, reporting to creditors or investors, and pursuing collection and loss mitigation activities (including foreclosures and loan modifications) with respect to delinquent borrowers. Indeed, without dedicated companies to perform these activities, it is questionable whether a secondary market for mortgage-backed securities would exist in this country. ***Given the nature of their activities, servicers can have a direct and profound impact on borrowers***. (Emphasis added).

> The Federal Register went on:

> A servicer will expect to recoup its investment in purchasing mortgage servicing rights and earn a profit primarily through a net servicing fee (which is typically expressed as a constant rate assessed on unpaid mortgage balances), interest float on payment accounts between receipt and disbursement, and cross-marketing other products and services to borrowers. Under this business model, servicers act primarily as payment collectors and processors, and will have limited incentives to provide other customer service.

> Servicers also earn revenue from fees assessed on borrowers, including fees on late payments, fees for obtaining force-placed insurance, and fees for services, such as responding to telephone inquiries, processing

2

COMPLAINT

telephone payments, and providing payoff statements. *As a result, servicers have an incentive to look for opportunities to impose fees on borrowers to enhance revenues.* (Emphasis added).

These attributes of the servicing market created problems for certain borrowers even prior to the financial crisis. For example, borrowers experienced problems with mortgage servicers even during regional mortgage market downturns that preceded the financial crisis. *There is evidence that borrowers were subjected to improper fees that servicers had no reasonable basis to impose, improper force-placed insurance practices, and improper foreclosure and bankruptcy practices.* (Emphasis added)

Consumer harm has manifested in many different areas, and major servicers have entered into significant settlement agreements with Federal and State governmental authorities.

*[T]the Government Accountability Office (GAO) has found pervasive problems in broad segments of the mortgage servicing industry impacting delinquent borrowers, such as servicers who have misled, or failed to communicate with, borrowers*, lost or mishandled borrower-provided documents supporting loan modification requests, and generally provided inadequate service to delinquent borrowers. *It has been recognized in Inspector General reports, and the Bureau has learned from outreach with mortgage investors, that servicers may be acting to maximize their self-interests in the handling of delinquent borrowers, rather than the interests of owners or assignees of mortgage loans.* (Emphasis added)

## CASE SUMMARY

2.      This case represents the exact situation that the GAO was concerned with, a mortgage servicer improperly maximizing its revenue by assessing unnecessary and unwarranted fees on the loan accounts of borrowers whose loans it serviced.  Plaintiff, on behalf of herself and all other similarly situated, alleges that Defendants charged Plaintiff and other homeowners unnecessary and unjustified fees, including but not limited to Property Inspection Fees, Property Preservation Fees, Broker Price Opinion ("BPO") fees and Property Appraisal fees.  These unnecessary fees were added to the loan balances of Plaintiff and other homeowners without the borrowers' knowledge or consent through automated computer systems

1  which assessed them without basis and in direct contradiction of the terms of the

2  underlying Promissory Notes or Deeds of Trust encumbering the subject homes.

3  These unwarranted fees were supposedly assessed for various default-related

4  services and purportedly designed to protect the lender's interest in the property,

5  however this was a subterfuge and the fees were implemented not to protect the

6  lender's interests, but solely to increase Defendants' servicing profit.

7  **THE PARTIES**

8       3.     Plaintiff Virginia Mastroianni ("Plaintiff") is, and at all times

9  mentioned herein was, an individual residing in the State of California and County

10  of Los Angeles, and the title holder to the real property located at 13203 Dewey

11  Street, Los Angeles, CA 90066 and whose mortgage loan for the property was

12  serviced by Defendants.

13       4.     Defendant New Penn Financial, LLC, doing business as Shellpoint

14  Mortgage Servicing ("NPF" or "Defendant") is, and at all times mentioned herein

15  was, a limited liability company organized under the laws of Delaware with

16  principal place of business at 4000 Chemical Road, Suite 200, Plymouth Meeting,

17  Pennsylvania 19462.  NPF acts as a servicer for mortgage loans and does so for

18  different lending institutions and banks throughout the United States. NPF regularly

19  conducts business within the State of California, County of Los Angeles.

20       5.     In or about July 2014, Plaintiff's mortgage loan was characterized by

21  Defendants as delinquent.  From that point in time, Defendants began assessing the

22  following fees against Plaintiff's loan balance through its automated systems: on

23  August 13, 2014: Plaintiff was assessed a $95.00 fee for "BPO/Appraisal" on

24  September 8, 2014; Plaintiff was assessed a $15.00 fee for Property Inspection on

25  October 7, 2014. Plaintiff was assessed a $15.00 fee for Property Inspection on

26  November 24, 2014. Plaintiff was assessed a $175.00 fee for Property Preservation

27  on November 24, 2014. Plaintiff was assessed a $155.00 fee for Property

28  Preservation on December 4, 2014; Plaintiff was assessed a $15.00 fee for Property

4

COMPLAINT

Inspection on January 1, 2015; Plaintiff was assessed a $15.00 fee for Property Inspection on February 10, 2015; Plaintiff was assessed a $15.00 fee for Property Inspection on February 10, 2015; Plaintiff was assessed a $175.00 fee for Property Preservation on February 10, 2015; Plaintiff was assessed a $155.00 fee for Property Preservation on March 25, 2015; Plaintiff was assessed a $15.00 fee for Property Inspection on April 15, 2015; Plaintiff was assessed a $15.00 fee for Property Inspection on April 28, 2015; Plaintiff was assessed a $95.00 fee for "BPO/Appraisal" on May 13, 2015; Plaintiff was assessed a $15.00 fee for Property Inspection on June 17, 2015.

6.      During this entire period of time that Defendants were assessing these fees, Defendants were aware that Plaintiff's property was occupied and that she was in regular contact with Defendants regarding her loan, her property and/or loss mitigation options.

7.      Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 10 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiff is informed and believes and based on such information and belief alleges that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiff will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

8.      Plaintiff is informed and believes and based on such information and belief alleges that NPF and DOE Defendants 1 through 10, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein. Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other

1  Defendants, and are therefore alleged to be jointly and severally liable for the claims

2  set forth herein, except as otherwise alleged.

3                              **JURISDICTION AND VENUE**

4          9.      This Court has original jurisdiction over this action under the Class

5  Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which (i)

6  the proposed class consists of more than 100 members; (ii) at least some members of

7  the proposed class are citizens of a state different from at least one of the

8  defendants; and (iii) the matter in controversy exceeds $5,000,000, exclusive of

9  interest and costs.

10         10.     This Court has personal jurisdiction over Defendants because they are

11  authorized to conduct business in California, have sufficient minimum contacts in

12  California, or otherwise intentionally avail themselves of the markets within

13  California, through the servicing of mortgage loans to homeowners in California.

14         11.     Venue is proper in the Central District of California, Western Division,

15  pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events that give

16  rise to the claims herein occurred in this District. In particular, Plaintiff's home is

17  located at 13203 Dewey Street, Los Angeles, CA 90066, the mortgage loan for

18  which was served by Defendants. Thus, the servicing at issue took place within this

19  District and Division. Venue is also proper because Defendants transact substantial

20  business in this District and Division.

21         12.     All of the allegations contained in this Complaint are based upon

22  information and belief, except for those pertaining to Plaintiff and her counsel.

23  Plaintiff's information and belief are based upon, among other things, the

24  investigation that Plaintiff and her counsel have conducted to date. The allegations

25  in this Complaint are substantiated by evidentiary support or are likely to be

26  substantiated by evidentiary support upon further investigation and discovery.

27

28

00051206.3

COMPLAINT

## FACTS COMMON TO ALL CAUSES OF ACTION

13.     Defendants do business in California and around the country as Shellpoint Mortgage Servicing, a mortgage servicing company and acts as the servicer for numerous residential mortgage loans across the country, including those for properties owned by California residents and located within in California.  On information and belief, Defendants act as the servicer on tens of thousands of such loans, and have developed, implemented, and rely upon highly automated computer systems to uniformly administer the day-to-day servicing responsibilities for the residential mortgage loans they service.

14.     On Plaintiff's information and belief the computerized system used by Defendants employs codes and triggers allowing Defendants to systematically automate all sorts of functions, including the assessment of fees that are at issue in this case.  These systems treat each borrower/mortgage loan being serviced identically and operate with virtually no human involvement or oversight of what is actually happening in any particular loan.

15.     On further information and belief, Defendants were aware that the internal schedules, policies and procedures in their computer systems were designed to assess borrowers with a host of unnecessary fees and to do so as often as possible, the goal being to artificially increase loan balances and, ultimately, Defendants' revenue and bottom line.

16.     Once a homeowners' loan is categorized as delinquent within Defendants' computer system, Defendants' system charges a myriad of unwarranted fees, including fees for unnecessary or bogus property inspections, broker's price opinions ("BPOs"), appraisals and property preservation fees.  Defendants tack these unwarranted and unnecessary fees on to the accounts of the most vulnerable and in need – homeowners who are already behind on their payments or otherwise struggling to make their mortgage loan payments.

17.     Defendants, with full knowledge of their computer systems and how they work, engaged in a regular pattern and practice of assessing all manner of fees to borrowers' accounts which are neither justified, recognized nor accepted in the mortgage servicing industry.  These fees are added to the borrowers' balance without any real explanation and then are sought to be collected from the borrower as additional debts as part of the loss mitigation or foreclosure process.  These fees are added to the borrower's balance, placing them deeper into debt and making any reinstatement, payoff or modification of their loan that much more expensive or difficult because it now includes these unnecessary fees – fees that result in profits to Defendants.

## Property Inspection Fees

18.     Under industry standards, and as normally allowed pursuant to the terms of the Deed of Trust, when a loan becomes delinquent, servicers, pursuant to loss mitigation protocols, may perform a property inspection and assess a fee to the borrower for this inspection.  These inspection fees typically run between $15 - $20 and are intended to confirm or determine, among other things, occupancy and the condition of the property.  However, these property inspections are not required on a monthly basis, especially when Defendants are aware that the property is occupied and borrowers and are in contact with Defendants in regards to loss mitigation options.  Despite this, Defendants routinely assess through automated processes these unwarranted, unnecessary, and exaggerated fees to borrowers' accounts month after month.  Although such inspections purportedly are conducted to guard against loss, Defendants' system and practices are designed to ensure that these fees are charged to as many accounts as possible without regards to need or legitimacy. This is direct contravention of both the terms of the Deed of Trust on the properties as well as the Fannie Mae Servicing Guidelines.

19.     Plaintiff is informed and believes, and on that basis, alleges that even if the property inspections were properly performed and actually reviewed,

Defendants' repeated and automated assessment of fees for these inspections on borrowers' accounts is still improper and unnecessary because of the frequency with which they are performed and the circumstances under which they are ordered.  If the first inspection report shows that the property is occupied and in good condition, it is unnecessary for Defendants to continue to order monthly inspections because there is nothing in the reports that justifies continued monitoring or the assessment of fees.  Likewise, if Defendants are in regular contact with the borrower and the borrower and Defendants are engaged in discussions about loss mitigation options, there is no legitimate reason for continued inspections or repeated fee assessments for such services other than for Defendants' financial gain.

**Property Preservation Fees**

20.     In addition to the property inspection fees, Defendants also routinely and through automated processes assess borrowers' accounts with something creatively called a "property preservation fee," a fee both unexplained and unauthorized by the terms of the usual Deed of Trust.  Indeed, Defendants routinely assess this illusory "property preservation fee" on the very same day Defendants already charged the borrower for the aforementioned property inspection fee.  These "property preservation fees," however, typically cost the borrower in excess of $300.

21.     Under Fannie Mae Servicing Guidelines, a servicer must inspect a property if it has information that the value of the property may be in jeopardy because of its condition.  When an inspection discloses any condition detrimental to the value of the property or the need for urgent repairs the servicer must remind the borrower of their obligation to maintain the property and depending upon the borrowers response take certain prescribed actions to mitigate against any loss in value to the property.  Neither the Plaintiff herein, nor on information and belief any of the Class members, were notified by Defendants that any inspection had revealed any detrimental condition of their properties warranting urgent repairs, nor were

they asked to effectuate any repairs prior to the imposition of this "property preservation fee."  These fees are improper and unnecessary, serve no legitimate purpose, violate Fannie Mae Servicing Guidelines, are not authorized by the terms of borrowers' Deeds of Trust, and only benefit Defendants' bottom line at the borrowers' expense.

### Appraisal Fees

22.   Defendants also charge borrowers for appraisal fees.  Defendants, however, routinely and through automated processes charge borrowers multiple appraisal fees for appraisals conducted within just a month or two of the others. These fees, like the other charges, are unnecessary and are being utilized to generate additional revenue for Defendants.  Fees assessed for multiple appraisals within short intervals serve no other legitimate purpose.  In addition, on information and belief, Defendants do not actually obtain an "appraisal" because a true appraisal requires access to the interior of the property, measurements, photographs and other work that is just not being done even though it is being charged to the borrowers as though it were.

23.   Further, on Plaintiff's information and belief Defendants assess such appraisal fees in connection with borrower's loans that are being considered for modification under the Home Affordable Mortgage Program ("HAMP"). Such fee assessments by Defendants are improper because, under HAMP guidelines, administrative costs such as property valuation fees are the financial obligation of the servicer of the loan that may not be assessed against the borrower.

### Brokers Price Opinions (BPOs)

24.   Charges for Broker's Price Opinions ("BPOs") are assessed to borrowers' accounts by Defendants with alarming regularity and regardless of whether the BPO is actually necessary.  When used legitimately, BPOs are employed by the mortgage servicing industry to assess the value of the collateral (the property) for loss mitigation purposes, in particular for a foreclosure sale.

Defendants, however, use BPOs as a revenue generation tool, ordering BPOs be conducted (and fees assessed to borrowers) through automated processes on properties when they are unnecessary, for example by charging for multiple BPOs within short periods of time when there is no need to do so.

25.     In order to further lull borrowers into a sense of trust, conceal the unlawfulness or impropriety of the assessed fees, and dissuade borrowers from challenging these fee assessments, Defendants falsely imply, based on their inclusion in the monthly statements sent to borrowers, that the assessed property inspection fees, BPO fees, property preservation fees and appraisal fees are permitted by the borrowers' Note and Deed of Trust.  However, the Note and Deed of Trust, which on Plaintiff's information and belief are uniform in their language, do not permit the indiscriminate and automated ordering and billing of fees for unnecessary and redundant property inspections, BPOs or appraisals, nor do they provide for the automated billing of unauthorized fees designated as "property preservation fees" as assessed by Defendants.

26.     Specifically, the Note and Deed of Trust provide that in the event of default the loan servicer will pay for what is reasonable or appropriate to protect the note holder's interest in the property, including protecting and/or assessing the value of the property and securing and/or repairing the property, and that the note holder will have the right to be paid back by the borrower for all of its expenses related thereto.  Those documents do not, however, permit such fees to be assessed on borrowers' accounts when they are marked up, unnecessary, or not needed to protect the note holder's interest in the property, or the value of the property itself.

27.     Defendants alone maintain a complete accounting of all fees assessed and paid, and the details of each and every improper and unnecessary fee assessed and paid by the Class members cannot be alleged with complete precision without access to these records.  Nevertheless, Plaintiff is informed and believes, and on that

basis alleges, that Class members paid some or all of the unlawful fees assessed on their accounts.

## CLASS ALLEGATIONS

28.     Plaintiff brings this action on behalf of herself, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b), and the case law thereunder.  The California class Plaintiff seeks to represent is defined as follows:

> All home mortgage borrowers in California whose loans were serviced by Defendants, deemed delinquent by Defendants, and who were assessed at least one of the following fees from November 24, 2011 to the present: Broker's Price Opinions, Property Inspection Fees, Property Preservation Fees or Appraisals.

29.     Excluded from the proposed Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

30.     Plaintiff reserves the right to amend or otherwise alter the Class definition presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

31.     *Numerosity*: The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. While the exact number of Class members is unknown at this time, Plaintiff is informed and believes that the entire Class or Classes consist of approximately tens of thousands of members.

32.     *Commonality*: Common questions of law or fact are shared by the Class members. This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues. Such common questions include, but are not limited to, the following:

1    a.    Whether Defendants' acts and practices violate the Rosenthal

2 Act (Cal. Civil Code § 1788 *et seq.*)

3    b.    Whether Defendants engaged in unfair business practices aimed

4 at deceiving Plaintiff and the Class members;

5    c.    Whether Defendants were unjustly enriched through the

6 assessment and collection of unnecessary and unjustified fees to Plaintiff's and the

7 Class members' accounts;

8    d.    Whether Defendants, by and through their officers, employees

9 and agents concealed, omitted and/or otherwise failed to disclose material

10 information to Plaintiff and the Class members regarding the fees assessed to their

11 accounts, their existence, true nature and assessment of unnecessary and unjustified

12 fees and charges to their accounts;

13    e.    Whether Defendants, by and through their officers, employees

14 and agents misrepresented the propriety and necessity of fees and charges being

15 assessed to the account of Plaintiff and the Class members;

16    f.    Whether Plaintiff and the Class are entitled to damages;

17    g.    Whether Plaintiff and the Class members are entitled to punitive

18 damages;

19    h.    Whether Plaintiff and the Class members are entitled to

20 restitution;

21    i.    Whether Plaintiff and the Class members are entitled to

22 injunctive relief; and

23    j.    Whether Plaintiff and the Class members are entitled to

24 attorneys' fees.

25    33.    *Typicality*:  Plaintiff's claims are typical of the claims of the Class

26 members. Plaintiff and the other Class members were subjected to the same kind of

27 unlawful conduct and the claims of Plaintiff and the other Class members are based

28 on the same legal theories.

34.   *Adequacy*: Plaintiff is an adequate representatives of the Class because her interests do not conflict with the interests of the other members of the Class members seek to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intend on prosecuting this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

35.   *Ascertainable Class*: The proposed Class is readily ascertainable in that the members can be easily identified and located using descriptive codes and/or information contained in Defendants' computerized mortgage servicing records.

36.   This case is brought and can be maintained as a class action under Rule 23(b)(1), 23(b)(2), and 23(b)(3):

a.   *Risk of Inconsistent Judgments*: The unlawful acts and practices of Defendants, as alleged herein, constitute a course of conduct common to Plaintiff and each Class member. Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of individual Class members to protect their interests;

b.   *Injunctive and/or Declaratory Relief to the Class is Appropriate*: Defendants, and each of them, have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the Class as a whole appropriate; and

c.   *Predominant Questions of Law or Fact*: Questions of law or fact common to the Class members, including those identified above, predominate over questions affecting only individual Class members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that

1  numerous individual actions would require. Further, an important public interest will

2  be served by addressing the matter as a class action. The cost to the court system of

3  adjudicating each such individual lawsuit would be substantial.

**COUNT ONE**

**(Violation of the Rosenthal Act – Cal. Civ. Code § 1788 *et seq.*)**

**(Against All Defendants)**

7  37.    Plaintiff repeats and re-alleges each and every allegation contained in

8  paragraphs 1 through 36, inclusive, and incorporates them as though fully set forth

9  herein.  Plaintiff brings this cause of action on behalf of herself and the members of

10  the Class.

11  38.    California's Rosenthal Debt Collection Practices Act ("Rosenthal Act")

12  prohibits creditors and debt collectors from, among other things, making false,

13  deceptive, or misleading representations in an effort to collect a debt.  Cal. Civ.

14  Code § 1788 *et seq.*  Plaintiff is a "debtor" as that term is defined by California Civil

15  Code section 1788.2(h).  Defendants are "debt collectors" as that term is defined in

16  California Civil Code section 1788.2(c) because they sent mortgage bills to Plaintiff

17  and members of the Class.

18  39.    Civil Code section 1788.17 provides that "every debt collector

19  collecting or attempting to collect a consumer debt shall comply with the provisions

20  of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in

21  Section 1692k of, Title 15 of the United States Code." Thus the Rosenthal Act

22  incorporates the provisions of the federal Fair Debt Collection Practices Act

23  (hereinafter "FDCPA") and a plaintiff may state a claim for violation of the

24  Rosenthal Act by showing that a defendant violated any of several provisions of the

25  FDCPA.

26  40.    Section 1692e of the FDCPA provides that a debt collector may not use

27  any "false, deceptive, or misleading representation or means in connection with the

28  collection of any debt including: (2) The false representation of (A) the character,

amount or legal status of any debt…."  Defendants falsely represented the character and amount of debts to the borrowers and used false representations or deceptive means to collect or attempt to collect those debts.

41.     As set out in detail above, Defendants engage in a pattern and practice of assessing all manner of unnecessary and unjustified fees and charges to the accounts of Plaintiff and Class members whose mortgages they service.  The fees for unnecessary property inspections, BPOs, appraisals, and property preservation purportedly owed by Plaintiff and members of the Class are a "debt" within the meaning of California Civil Code section 1788.2(d), because they are "money, property or their equivalent which [are] due or owing or alleged to be due or owing from a natural person to another person."

42.     Defendants sent mortgage bills to Plaintiff and members of the Class. Plaintiff and members of the Class made their mortgage payments to Defendants, Defendants accepted those payments, and made demands for payment, including the payment of fees for unnecessary property inspection, BPOs, appraisals, and property preservation after the point in time that said loans became delinquent by sending letters, making telephone calls, and other attempts to collect mortgage payments and fees.

43.     Defendants do not take into account or consideration whether there is a necessity for the alleged services (e.g., a property inspection) for which Defendants are charging the borrowers' accounts.  Defendants knowingly, affirmatively, and actively concealed and suppressed material facts, namely the fact that they assess borrowers' accounts for unnecessary default-related service fees, which is inconsistent with the servicing guidelines under which Defendants are obligated to operate. Contrary to Defendants' communications, they are not legally authorized to assess and collect these unnecessary fees.

44.     Defendants engage in this conduct in order to increase their revenue and profits.  Defendants also hide the truth from the borrowers through a

16

COMPLAINT

1   combination of incomplete, false, deceptive or misleading representations as to the

2   true nature, character and amount of the debts they are assessing to the borrower's

3   account.

4        45.     By engaging in these practices, Defendants violate the California

5   Rosenthal Fair Debt Collection Practices Act, Civil Code section 1788.10 *et seq.*,

6   and by implication the FDCPA, by misstating the character, amount or legal status

7   of the debts they are assessing to the Plaintiff and Class members.

8        46.     Defendants' acts as described above were done willfully and knowingly

9   within the meaning of California Civil Code section 1788.30(b).  On information

10  and belief, Defendants put in place a system, protocols and policies designed to

11  ensure these illegitimate fees are charged as often as possible and to as many

12  borrower accounts as possible in order to maximize Defendants' bottom line.  These

13  fees are unnecessary and unjustified.  They are designed to artificially increase loan

14  balances and, ultimately, Defendants' revenue while concealing the true nature,

15  character and amount of the debt.

16       47.     As a result of Defendants' actions herein, Plaintiff and Class members

17  have been damaged and seek all available relief under the California Rosenthal Fair

18  Collection Practices Act.  Pursuant to California Civil Code sections 1788.17 and

19  1788.30, Plaintiff and members of the Class are entitled to recover actual damages

20  sustained as a result of Defendants' violations of the RFDCPA. Such damages

21  include, without limitation, monetary losses and damages. Additionally, because

22  Defendants' violations of the RFDCPA were committed willingly and knowingly,

23  Plaintiff and members of the Class are entitled to recover penalties of up to $1,000

24  per violation as provided for in the RFDCPA.

25       48.     Pursuant to California Civil Code sections 1788.17 and 1788.30,

26  Plaintiff and the Class are entitled to recover all attorneys' fees, costs, and expenses

27  incurred in the bringing of this action.

28

**COUNT TWO**

**(Fraud – Concealment)**

**(Against All Defendants)**

49.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 48, inclusive, and incorporates them as though fully set forth herein.  Plaintiff brings this cause of action on behalf of herself and the members of the Class.

50.     Defendants suppressed and concealed material facts from the Plaintiff and members of the Class.  More precisely, Defendants suppressed and concealed from Plaintiff and Class members the existence, true nature and assessment of unnecessary and unjustified fees and charges to their accounts.

51.     Plaintiff and members of the Class, in fact, are not obligated to pay the sums that Defendants assessed to their accounts as part of Defendants' loss mitigation activities and Defendants are not authorized to assess or collect these fees from Plaintiff and the members of the Class.

52.     Defendants omit a true itemization, description or explanation which identifies the nature of each fee and also fails to disclose the nature of the charges and fees assessed to the account.

53.     Plaintiff and members of the Class reasonably relied on Defendants to comply with the disclosures set forth in the mortgage loan documents, including the Note and Deed of Trust, and further relied on the statements Defendants provided to them as reflecting complete, true, actual and legitimate costs and fees which they were responsible for and obligated to pay.

54.     Defendants knew their concealment and suppression of material facts was misleading, false and in violation of the disclosures made to borrowers.  Had the true nature of the fees and costs assessed to their accounts been disclosed by Defendants to Plaintiff and members of the Class, they would have been aware of the unnecessary and unjustified nature of the fees and costs Defendants were

18

COMPLAINT

1    assessing and would have disputed them.

2        55.     As a result of Defendants' fraudulent omissions and failures to disclose,

3 Plaintiff and members of the Class have been injured in fact and suffered a loss of

4 money or property. Plaintiff and members of the Class would not have paid

5 Defendants' fees or would have challenged the assessment of such fees to their

6 accounts had it not been for Defendants' concealment of material facts, which

7 Defendants concealed and omitted with knowledge of the effect of such

8 concealment or omission. Defendants knew that by misleading Plaintiff and

9 members of the Class, they would increase their revenue and drive profits up.

10        56.     Plaintiff and members of the Class justifiably relied upon Defendants'

11 affirmative, knowing and active concealment of facts. By concealing material

12 information about Defendants' plan and scheme to assess unnecessary and

13 unjustified fees and costs on borrowers' accounts, Defendants intended to increase

14 the borrowers' overall debt and induce Plaintiff and members of the Class to believe

15 they owed Defendants money that Defendants were not actually entitled to receive.

16        57.     By reason of the foregoing, Defendants are guilty of oppression, fraud,

17 and malice. Defendants knew that the fees and costs Defendants were charging

18 were unnecessary and unjustified and nevertheless charged such fees and costs to

19 the borrowers' accounts. Defendants undertook knowing steps to conceal the true

20 nature of the fees and costs they were assessing and withheld material information

21 from the borrowers concerning the fees and costs assessed to their accounts,

22 disregarding Plaintiff's and members of the Class' rights in the pursuit of illicit

23 profits. Therefore, in addition to actual compensatory damages, Plaintiff and

24 members of the Class are entitled to recover exemplary and punitive damages from

25 Defendants in such amount as proof at trial may indicate is appropriate.

26

27

28

**COUNT THREE**

**(Fraud – Misrepresentation)**

**(Against All Defendants)**

58.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 57, inclusive, and incorporates them as though fully set forth herein.  Plaintiff brings this cause of action on behalf of herself and the members of the Class.

59.     Defendants misrepresented material facts to the Plaintiff and members of the Class.  More precisely, Defendants misrepresented the propriety and necessity of fees and charges Defendants were assessing to their accounts – fees and charges that are neither justified, recognized nor accepted in the mortgage servicing industry.  Defendants knew the information they were providing to Plaintiff and members of the Class was misleading and false and that the fees Defendants were assessing and collecting were not permitted.

60.     Plaintiff and members of the Class, in fact, are not obligated to pay the sums that Defendants have assessed to their accounts as part of Defendants' loss mitigation activities and Defendants are not authorized to assess or collect these fees from Plaintiff and members of the Class.  Borrowers do not owe the amounts specified because fees included are not allowed under the mortgage contract or permitted by law.

61.     Plaintiff and members of the Class justifiably relied upon Defendants' misrepresentations contained within the monthly mortgage loan statements provided to borrowers and were led to believe they owed Defendants money that Defendants were not actually entitled to receive.  Had Plaintiff and members of the Class been told the truth about the fees and costs assessed to their accounts, they would have been aware of the unnecessary and unjustified nature of the fees and costs Defendants were assessing and would have disputed them.

62.     As a result of Defendants' fraudulent misrepresentations, Plaintiff and members of the Class have been injured in fact and suffered a loss of money or property.  Plaintiff and members of the Class would not have paid Defendants' fees or would have challenged the assessment of such fees to their accounts had it not been for Defendants' misstatements of material facts – misrepresentations Defendants made knowingly and intentionally in order to increase revenue and drive profits up.

63.     By reason of the foregoing, Defendants are guilty of oppression, fraud, and malice.  Defendants knew that the fees charged were unnecessary and unjustified and nevertheless charged such fees to the borrowers' accounts.  Defendants undertook knowing steps to misrepresent the propriety and necessity of the fees and costs Defendants were assessing and withheld material information from the borrowers concerning the fees and costs assessed to their accounts, all in disregard of Plaintiff's and the Class members' rights.  Therefore, in addition to actual compensatory damages, Plaintiff and members of the Class are entitled to recover exemplary and punitive damages from Defendants in such amount as proof at trial may indicate is appropriate.

## COUNT FOUR

### (Unjust Enrichment)

### (Against All Defendants)

64.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63, inclusive, and incorporates them as though fully set forth herein.  Plaintiff brings this cause of action on behalf of herself and members of the Class.

65.     The uniform mortgage contract with borrowers like Plaintiff and the members of the Class discloses that Defendants will pay for default-related services when necessary, and the borrower will reimburse it.  Nowhere in the mortgage contract is it disclosed that Defendants may incur unnecessary or unjustified fees.

66.     Nevertheless, Defendants have been assessing Plaintiff and members of the Class with unnecessary and unjustified fees and charges that they are told they must pay.

67.     Defendants retained and will retain for their own benefit these unnecessary and unjustified fees and charges that were obtained at Plaintiff and the Class members' expense.  Defendants, as a result, have been unjustly enriched at Plaintiff's and the Class members' expense and Plaintiff and members of the Class have been unjustly deprived.

68.     Defendants are aware that they are assessing unnecessary and unjustified fees on borrowers' accounts and continue to do so despite this knowledge.

69.     It would be inequitable and unconscionable for Defendants to retain the benefits and other compensation they obtained through the fraudulent, deceptive, wrongful and misleading conduct alleged herein.

70.     Plaintiff and members of the Class therefore seek restitution from Defendants and seek an order of this Court effectuating disgorgement of all profits, benefits and other compensation obtained by Defendants through their wrongful conduct.

**COUNT FIVE**

**(Violation Of Cal. Bus. & Prof. Code § 17200 *et seq.*)**

**(Against All Defendants)**

71.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 70, inclusive, and incorporates them as though fully set forth herein.

72.     California Business and Professions Code section 17200 *et seq.*, prohibits unlawful, unfair, and/or fraudulent business acts or practices.

73.     Plaintiff brings this cause of action on behalf of herself and on behalf of the Class against all Defendants for their unlawful business acts and/or practices

1  pursuant to California Business & Professions Code section 17200 *et seq*.

2      74.    Defendants are persons within the meaning of Business and Professions

3  Code section 17201.

4      75.    Defendants' practices are substantially injurious to consumers, offend

5  established public policy and are immoral, unethical, oppressive, and/or

6  unscrupulous.  Defendants' acts and practices as described above also deceived, and

7  had a tendency to deceive, Plaintiff and members of the Class and constitute a

8  fraudulent business act or practice.  Defendants' violation of California's consumer

9  protection and unfair competition laws in California resulted in harm to consumers.

10      76.    California Business and Professions Code section 17200 also prohibits

11  any "fraudulent business act or practice."  Defendants' concealment of material

12  facts, as set forth above, was false, misleading, or likely to deceive the public within

13  the meaning of California Business and Professions Code section 17200.

14  Defendants' concealment was made with knowledge of its effect, and was done to

15  induce Plaintiff and members of the Class to pay the unnecessary fees for default-

16  related services.  Defendants omit the fact that the amounts Defendants represent as

17  being owed are unnecessary or unauthorized fees.  Contrary to Defendants'

18  communications, it is not legally authorized to assess and collect these fees.

19      77.    Plaintiff and members of the Class relied on their reasonable

20  expectation that Defendants would comply with the disclosures set forth in the

21  mortgage agreement, Notes, and Security Instruments, and not to charge borrowers

22  with unnecessary or unauthorized fees, and as a result, Plaintiff and members of the

23  Class relied on Defendants' disclosures about the fees, reasonably believing the

24  charges were valid and necessary.

25      78.    Plaintiff asserts these claims on behalf of herself and other home

26  mortgage borrowers in California who have expended funds or incurred obligations

27  that Defendants should be required to pay or reimburse under the equitable and

28

1  restitutionary remedies provided by California Business and Professions Code

2  section 17200 *et seq.*

3       79.    The unlawful acts and practices of Defendants alleged above constitute

4  unlawful business acts and/or practices within the meaning of California Business

5  and Professions Code section 17200 *et seq.*  Defendants' activities violate, among

6  others, the provisions of Section 5 of the Federal Trade Commission Act (15 U.S.C.

7  § 45(a)(1) (declaring unlawful any unfair methods of competition and any unfair or

8  deceptive acts or practices affecting commerce); California's Residential Mortgage

9  Lending Act (Cal. Fin. Code § 50124(a)(13) (which requires servicers refrain from

10 committing a crime against the laws of any state or the United States, involving

11 moral turpitude, misrepresentation, fraudulent or dishonest dealing, or fraud), §

12 50204(l) (prohibiting servicers from engaging in any acts in violation of Section

13 17200 or 17500 of the Business and Professions Code), § 50204(j) (prohibiting

14 servicers from knowingly misrepresenting, circumventing, or concealing, through

15 subterfuge or device, any material aspect or information regarding a transaction to

16 which it is a party), or § 50204(k) (prohibiting servicers from doing an act that

17 constitutes fraud or dishonest dealings); Title X, the Residential Mortgage Servicing

18 Guidelines under the Dodd-Frank Act 12 CFR 1024.38 (requiring mortgage

19 servicers to provide accurate and timely disclosures and information both to

20 borrowers and to the owners of the loans for whom the servicer is working), and the

21 Rosenthal Act (Cal. Civil Code § 1788 *et. seq*).

22      80.    By engaging in the above-described acts and practices, as well as others

23 set forth herein, Defendants committed one or more acts of unfair competition

24 within the meaning of Business and Professions Code section 17200 *et seq.*

25 California's unfair competition law has a broad scope that allows for violations of

26 other laws to be treated as unfair competition that is independently actionable and, at

27 the same time, also sweeps within its scope acts and practices not specifically

28 proscribed by any other law.

81.     Plaintiff and the Class members are direct victims of Defendants' unlawful conduct, as herein alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants' fraudulent, unlawful, and unfair business practices.  Plaintiff and the members of the Class would not have paid Defendants' unlawful fees or they would have challenged the assessment of such fees on their accounts had it not been for Defendants' concealment of material facts.

82.     As a direct and proximate result of the aforementioned acts, Defendants received monies and continue to hold the monies expended by Plaintiff and members of the Class who were assessed with the unnecessary and unjustified fees described herein.  Plaintiff and members of the Class have lost or been deprived of money or had their debt obligation artificially increased, and these injuries are the result of the unfair business practices set forth herein.

83.     Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over their competitors.

84.     Defendants have thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and the members of the Class to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

85.     Additionally, under Business and Professions Code section 17203, Plaintiff and members of the Class seek an order requiring Defendants to immediately cease such acts of unlawful, unfair, and fraudulent business practices, and requiring Defendants to correct their actions

86.     In addition to the relief requested in the Prayer below, Plaintiff and members of the Class seek the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.  The unlawful acts and practices, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendants as described herein. Plaintiff, members of the Class and other members of the general public have no other remedy of law that will prevent Defendants' misconduct as alleged herein from

occurring and/or reoccurring in the future.

87.    Plaintiff and members of the Class are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unlawful and deceptive acts and practices, attorneys' fees and costs, declaratory relief and a permanent injunction enjoining Defendants from their unlawful activity.

**COUNT SIX**

**(Intentional Interference With Contract)**

**(Against All Defendants)**

88.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 87, inclusive, and incorporates them as though fully set forth herein.  Plaintiff brings this cause of action on behalf of herself and members of the Class.

89.    Plaintiff and members of the Class were each parties to valid, uniform contracts with lenders, in particular contracts in the form of promissory notes and deeds of trust (together, the "Contract").  Defendants, as the servicer of the loans evidenced by the Contract, had knowledge regarding the Contract and were aware of the contractual relationship between Plaintiff, members of the Class, and the lenders for whom Defendants worked.  The Contract provides, in pertinent part, that the borrower will make monthly payments of the amounts due for the mortgage and that if the borrower fails to make the payments the lender may exercise its rights under the security instrument (the deed of trust) and foreclose on the borrower's property. The Contract also includes provisions regarding notice of defaults to be given the borrower and provisions for the borrower to cure any defaults, including financial or payment based defaults.

90.    As detailed herein, Defendants impose unnecessary and unjustified fees to borrowers' accounts, which in turn increases the amount due from the borrowers

and the amount the borrowers must pay in order to cure any financial or payment based default under the Contract.

91.     On information and belief, Defendants put in place a system, protocols and policies designed to ensure these routinely and automatically assessed, unnecessary and unjustified fees are charged to as many borrower accounts as often as possible in order to maximize Defendants' bottom line.  These fees are not permitted to be billed to Plaintiff and members of the Class under industry practices and standards.  The fees are unnecessary and unjustified for purposes of protecting the lender's security interest or the value of the property.  Once imposed, however, these fees and costs become part of the borrowers' debt and must be paid by the borrower in order to cure the default under the Contract, thereby preventing or making performance thereof by the borrower more difficult.

92.     Defendants' acts of imposing unnecessary and unjustified fees on borrowers' accounts are intentional and carried out in bad faith.  At the very least, Defendants know that their acts are certain or substantially certain to interfere with the contractual relationship between the lenders and the borrowers.

93.     Defendants' acts as alleged herein are self-serving, designed to generate pecuniary benefits for itself and have caused a breach or disruption in the contractual relationship between Plaintiff, members of the Class, and their lenders.

94.     Defendants' acts, as alleged herein, were a substantial factor in causing Plaintiff and members of the Class harm.   Plaintiff and the Class members have been damaged as a direct and proximate result of Defendants' acts in an amount to be proven at trial.

95.     By reason of the foregoing, Defendants are guilty of oppression, fraud, and malice.  Defendants knew that the fees and costs they were charging were unnecessary and unjustified and nevertheless charged such fees and costs to the borrowers' accounts and, in so doing, caused the fees and costs become part of the borrowers' debt which must be paid by the borrower in order to cure the default

1   under the Contract, thereby preventing or making performance by the borrower

2   more difficult.  Defendants assessed these unnecessary and unjustified fees and costs

3   to the borrowers in disregard of their rights and interests, focusing only on the

4   pursuit of illicit profits.  Therefore, in addition to actual compensatory damages,

5   Plaintiff and the Class members are entitled to recover exemplary and punitive

6   damages from Defendants in such amount as proof at trial may indicate is

7   appropriate.

8                              **COUNT SEVEN**

9                           **(Negligence Per Se)**

10                         **(Against All Defendants)**

11        96.     Plaintiff repeats and re-alleges each and every allegation contained in

12   paragraphs 1 through 95, inclusive, and incorporates them as though fully set forth

13   herein.  Plaintiff brings this cause of action on behalf of herself and members of the

14   Class.

15        97.     Once Defendants undertook the servicing of Plaintiff's and the Class

16   members' mortgage loans, Defendants owed Plaintiff and the Class members a duty

17   to exercise reasonable care in the manner and method in which they charged and

18   assessed various fees for automated loss mitigation services performed by them,

19   which fees were added to the loan balance on Plaintiff's and the Class members'

20   loans.

21        98.     Defendants breached their duty to exercise reasonable care in the

22   servicing of Plaintiff's and the Class members' loans by, among other things,

23   directing and allowing their automated computer programs to assess loss mitigation

24   related fees such as property inspection fees, property preservation fees, appraisals,

25   and BPOs without regards to their necessity, redundancy, property status, or degree

26   of contact with the Plaintiff or the Class members; materially misrepresenting the

27   necessity, nature and extent of such automated loss mitigation fee assessments to

28   Plaintiff and the Class Members, failing to disclose to Plaintiff and the Class

1   members that these additional unnecessary and automated loss mitigation related

2   fees were being added to their loan payoff balances; and as a result misstating to

3   Plaintiff and the Class members the character, amount or legal status of their

4   mortgage indebtedness while seeking to collect on said mortgage debt.

5       99.     The servicing of Plaintiff's and the Class members' loans by

6   Defendants was intended to and did directly affect Plaintiff's and the Class

7   members' financial obligations and it was foreseeable that Defendants' actions, as

8   described herein, would cause actual and definite harm to Plaintiff and the Class

9   members.

10      100.    Defendants' behavior is morally blameworthy in that they placed their

11  own financial interests ahead of their duty to act fairly, honestly or transparently in

12  dealings with Plaintiff and the Class members and, in so doing, created a financial

13  windfall for themselves at Plaintiff's and the Class member's expense.

14      101.    Additionally, Defendants' acts: 1) violate the California Rosenthal Fair

15  Debt Collection Practices Act, Civil Code Section 1788.10 *et seq*.; 2) constitute

16  unlawful business acts and/or practices within the meaning of California Business

17  and Professions Code section 17200 *et seq*.; 3) violate provisions of Section 5 of the

18  Federal Trade Commission Act (15 U.S.C. § 45(a)(1) (declaring unlawful any unfair

19  methods of competition and any unfair or deceptive acts or practices affecting

20  commerce); 4) violate California's Residential Mortgage Lending Act (Cal. Fin.

21  Code § 50124(a)(13) (which requires servicers refrain from  committing a crime

22  against the laws of any state or the United States, involving moral turpitude,

23  misrepresentation, fraudulent or dishonest dealing, or fraud), § 50204(l) (prohibiting

24  servicers from engaging in any acts in violation of Section 17200 or 17500 of the

25  Business and Professions Code), § 50204(j) (prohibiting servicers from knowingly

26  misrepresenting, circumventing, or concealing, through subterfuge or device, any

27  material aspect or information regarding a transaction to which it is a party), or §

28  50204(k) (prohibiting servicers from doing an act that constitutes fraud or dishonest

dealings); and 5) violate Title X, the Residential Mortgage Servicing Guidelines under the Dodd-Frank Act, 12 CFR 1024.38, (requiring mortgage servicers to provide accurate and timely disclosures and information both to borrowers and to the owners of the loans for whom the servicer is working). As a result of such statutory violations, Defendants' actions herein constitute negligence per se.

102.   Plaintiff and the Class members have been damaged as a direct and proximate result of Defendants' breaches in an amount to be proven at trial.

**WHEREFORE**, Plaintiff and all Class members pray for judgment against each Defendant, jointly and severally, as follows:

1.   An order certifying this case as a class action and appointing Plaintiff and her counsel to represent the Class;

2.   For actual damages according to proof;

3.   For compensatory damages as permitted by law;

4.   For consequential damages as permitted by law;

5.   For statutory damages as permitted by law;

6.   For punitive damages as permitted by law;

7.   For equitable relief, including restitution;

8.   For restitutionary disgorgement of all profits Defendants obtained as a result of unfair competition;

9.   For interest as permitted by law;

10.   For a mandatory injunction requiring Defendants to permanently cease and desist from assessing and charging the accounts of borrowers whose loans they service with unnecessary and unjustified loss-mitigation related fees;

1      11.    For reasonable attorneys' fees and costs; and

2      12.    For such other relief as is just and proper.

3

4  DATED:  November 24, 2015     Respectfully submitted,

5

6                      BOUCHER LLP

7                      By:     /s/ Raymond P. Boucher

8                           RAYMOND P. BOUCHER
                           SHEHNAZ M. BHUJWALA

9

10                 LAW OFFICES OF DAVID N. LAKE
                 By:     /s/ David N. Lake

11                       DAVID N. LAKE

12

13                 *Attorneys for Plaintiff and the Putative Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2

Plaintiff hereby respectfully demands a trial by jury to the full extent

3

permitted by law.

4

DATED:  November 24, 2015          Respectfully submitted,

5

6

BOUCHER LLP

7

By:          /s/ Raymond P. Boucher

RAYMOND P. BOUCHER

8

SHEHNAZ M. BHUJWALA

9

10

LAW OFFICES OF DAVID N. LAKE

By:          /s/ David N. Lake

11

DAVID N. LAKE

12

*Attorneys for Plaintiff and the Putative*

13

*Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00051206.3

COMPLAINT